IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANDRA L. H., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-0590-BH |
| | § | |
| NANCY A. BERRYHILL, ACTING, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | Consent |

## MEMORANDUM OPINION AND ORDER

By consent of the parties and the order of transfer dated May 22, 2018 (doc. 15), this case has been transferred for the conduct of all further proceedings and the entry of judgment. Based on the relevant filings, evidence, and applicable law, the decision of the Commissioner is **AFFIRMED**.

### I. BACKGROUND

Sandra L. H. (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act (Act). (*See* docs. 1; 18.)

**A.  Procedural History**

On August 12, 2015, Plaintiff filed her application for SSI, alleging disability beginning on May 1, 2015. (doc. 12-1 at 176.)[1] Her claim was denied initially on December 7, 2015, and upon reconsideration on June 13, 2016. (*Id*. at 78, 99.) On August 30, 2016, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (*Id*. at 123.) She appeared and testified at a hearing on

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

March 30, 2017.  (*Id*. at 31-77.)  On May 12, 2017, the ALJ issued a decision finding her not disabled and denying her claim for benefits.  (*Id*. at 16-25.)

Plaintiff timely appealed to the Appeals Council on July 5, 2017.  (*Id*. at 173-74.)  The Appeals Council denied her request for review on January 12, 2018, making the ALJ's decision the final decision of the Commissioner.  (*Id*. at 5.)  Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g).  (*See* doc. 1.)

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born on July 22, 1959, and was 57 years old at the time of the hearing.  (doc. 12-1 at 176.)  She had at least a high school education and could communicate in English.  (*Id*. at 198, 200.)  She had past relevant work experience as a laundry mat supervisor and medical records clerk.  (*Id*. at 24, 35.)

    **2.     Medical Evidence**

On June 4, 2014, Plaintiff presented to Parkland Hospital (Parkland) "to get care established" and complained of back pain that she rated at a 7 out of 10.  (*Id*. at 321.)  A review of systems showed she was positive for malaise, fatigue, blurred vision, heartburn, nausea, abdominal pain, back pain, sensory change, and headaches.  (*Id*. at 321-22.)  She reported chronic lower back pain that felt like a pinched nerve, as well as occasional numbness to her lower left extremity, but she denied any weakness.  (*Id*. at 322.)  She was of thin stature and had a BMI of 16.3.  (*Id*.)  Her breath sounded normal, and she had no respiratory distress, wheezes, or rales.  (*Id*. at 322.)

On April 20, 2015, Plaintiff presented to Parkland complaining of abdominal pain and back pain.  (*Id*. at 341.)  A review of systems showed she had abdominal pain, constipation, back pain,

depression, and nervousness/anxiousness. (*Id*.) An x-ray of her lumbar spine revealed osteopenia, atherosclerotic disease, facet arthropathy, degenerative disc disease with trace retrolisthesis on L3-4, trace vertebral body height loss at L1, and severe disc space narrowing at L2-3. (*Id*. at 344.)

On August 6, 2015, and October 17, 2016, Sunti Srivathanakul, M.D., completed medical release/physician's statements for Plaintiff. (*Id*. at 274-75.) In August, he opined that she was permanently disabled due to back arthritis. (*Id*. at 274.) In October, he opined that she was permanently disabled and unable to work or participate in activities due to her asthma and back arthritis. (*Id*. at 275.)

On September 24, 2015, Harold Nachimson, M.D., J.D., completed an internal medicine examination for Plaintiff. (*Id*. at 352-56.) She complained of having low-back pain for 2 years as a result of a fall. (*Id*. at 352.) Dr. Nachimson noted that she drove and smoked a pack of cigarettes per day. (*Id*.) She lived alone but her aunt was going to stay with her, her self-care was unrestricted, she shopped without difficulty and pushed a cart, she could walk about 1 block but her legs and back would start hurting, and she did light cooking and light housework; she did not do yard work and she did not use assistive devices, braces, or a handicap sticker. (*Id*. at 353.) She weighed 93 pounds and was 5'2", with a BMI of 18.5. (*Id*. at 354.) She had full range of motion in her neck, normal gait, and well-aligned feet, and she was able to tiptoe and heel stand without difficulty, flex 85-90 degrees, and hyper-extend 20 degrees. (*Id*. at 354-55.) Her right and left lateral flexion was 20-25 degrees, her straight leg raise test was positive on the right and negative on the left, and she had discomfort at about 55 degrees. (*Id*. at 355.) She generally had full range of motion in her shoulders, elbows, and wrists, full pronation and supination in her wrists, and full flexion and extension. (*Id*.) Her deep tendon reflexes were 1+ in the ankles, 2+ in the knees, and 1+ in the

3

upper extremities bilaterally. (*Id*.) She did not exhibit any loss of sharp pain or soft touch throughout the upper extremities, including the fingertips on both hands, and she had full sensation of sharp pain and soft touch down the entire extent of her lower extremities, including the lateral and medial surface of both feet and the plantar surface of both feet. (*Id*.) Dr. Nachimson's clinical impressions included lumbar myofascitis, a gastrointestinal problem with possible ulcer disease, possible sleep apnea, reflux and possible ulcer disease, and a BMI of 18.5. (*Id*.)

On October 15, 2015, Plaintiff had an appointment at Parkland for a screening colonoscopy. (*Id*. at 379.) She had lost 10 pounds over the previous 3 months. (*Id*.) Her BMI was 17 at this appointment. (*Id*. at 381.)

On November 10, 2015, Plaintiff underwent Consultative Pulmonary Function Testing. (*Id*. at 361-62.) Her FVC/FEV1 results post-bronchodilation were 2.58/1.54, 2.65/1.53, and 2.67/1.58, with good effort, understanding, and cooperation. (*Id*.)

On December 4, 2015, Scott Spoor, M.D., a state agency medical consultant (SAMC), completed a physical residual functional capacity (RFC) evaluation for Plaintiff based on the medical evidence of record. (*Id*. at 84-86.) Dr. Spoor opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for a total of 6 hours in an 8-hour workday with normal breaks; sit for a total of 6 hours in an 8-hour workday with normal breaks; push and/or pull (including operation of hand and/or foot controls) without limitation other than shown for lift and/or carry; frequently climb ramps, stairs, ladders, ropes, and scaffolds; frequently, balance, kneel, and crawl; and occasionally stoop and crouch. (*Id*. at 84-85.) He further opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (*Id*. at 85.) Dr. Spoor determined that Plaintiff's statements regarding her impairment-related functional

limitations and restrictions could not reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record. (*Id*. at 86.)

On February 3, 2016, an x-ray of Plaintiff's lumbar spine showed multi-level degenerative changes of the lumbar spine without evidence of thecal stenosis or neural compromise. (*Id*. at 396.) Findings were most severe at L2-3, where there was advanced disc height loss associated with large osteophytes and marrow degenerative changes. (*Id*.)

On May 12, 2016, David Ukoha, M.D., completed an internal medicine consultative examination for Plaintiff. (*Id*. at 428-30.) Dr. Ukoha noted that she had a history of chronic back pain. (*Id*. at 428.) Her physical examination "showed a young lady in no apparent distress." (*Id*.) Her breath sounds were equal bilaterally with minimal wheeze and no crackles, grip strength was normal, fine motor control was normal, Romberg test was negative, gait was grossly normal and satisfactory, and her sensory exam was within normal limits. (*Id*. at 430.) Her deep tendon reflexes were 2+ for all extremities without any evidence of pathological reflexes, and she had normal coordination on finger-to-nose and heel-to-shin testing. (*Id*.) She had normal musculature with no fasciculations or loss of muscle, mild difficulty squatting, hopping, tandem walking, and toe walking due to low back pain, and her straight leg raise test was positive at 20 degrees bilaterally. (*Id*.) Her spinal range of motion was minimally decreased due to low back pain, spinal flexion was decreased to about 85 degrees, hyperextension of the spine was decreased to 85 degrees, lateral bending to the right and left was decreased to 32 degrees, and left and right lateral rotation of the spine was decreased to about 27 degrees. (*Id*.)

On June 13, 2016, Charles K. Lee, M.D., a SAMC, also completed a physical RFC evaluation for Plaintiff based on the medical evidence of record. (*Id*. at 94-96.) His opinions were

identical to those of Dr. Spoor, except he found that Plaintiff also had environmental limitations in that she could have unlimited exposure to wetness, noise, and vibration, but she must avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. (*Id*. at 95-96.) He also found that her statements regarding her impairment related functional limitations and restrictions could not reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record. (*Id*. at 96.)

On November 16, 2016, Dr. Srivathanakul completed a Medical Source Statement of Ability to Do Work Related Activities (Physical) for Plaintiff. (*Id*. at 276-281.) He opined that she could lift and/or carry only up to 10 pounds occasionally; sit and/or stand for 4 hours at a time without interruption; walk for 2 hours at a time without interruption; sit for 4 hours in an 8-hour workday; stand and/or walk for 2 hours in an 8-hour workday; frequently reach, handle, finger, feel, push, and pull bilaterally; occasionally operate foot controls bilaterally; never perform any postural activities; and never tolerate exposure to environmental conditions except for moderate noise. (*Id*. at 276-80.) She did not require the use of a cane to ambulate. (*Id*. at 277) He also opined that Plaintiff could shop, ambulate without assistive devices, use standard public transportation, climb a few steps at a reasonable pace using a single hand rail, prepare simple meals and feed herself, and care for her personal hygiene, but could not travel without a companion for assistance, walk a block at a reasonable pace on rough or uneven surfaces, or sort, handle, or use papers/files. (*Id*. at 281.) He found that her limitations were due to her emphysema and back arthritis, and that she would be unable to handle stress due to her depression. (*Id*. at 276, 278-81.)

### 3. Hearing Testimony

On March 30, 2017, Plaintiff and a vocational expert (VE) testified at a hearing before the

ALJ. (*Id*. at 31-77.) Plaintiff was represented by an attorney. (*Id*. at 31, 33.)

      a.      ***Plaintiff's Testimony***

Plaintiff testified that she was 5'3", weighed 96 pounds, and lived in a one story house by herself. (*Id*. at 37, 61, 63.) She had a driver's license, drove occasionally, and drove herself to the hearing. (*Id*. at 51, 61.) Her parents helped to support her financially, and she also received food stamps. (*Id*. at 52, 61.) She took care of her own personal care, prepared her own meals, washed her own clothes at her parents' house, and grocery-shopped on her own. (*Id*. at 63-66.) When she needed to do laundry, she would carry about 5-7 pounds of clothes in a garbage bag and drive to her parents house to wash, and she only grocery-shopped for about 20-25 minutes and leaned on the shopping cart as she pushed it. (*Id*. at 64-66.) She usually ended up with about 10 little bags of groceries so she would not have to carry very much, and she might take breaks in between unloading the groceries once she was back home. (*Id*. at 67.) She would shower about every 2-3 days. (*Id*. at 69.) Some days she would not get out of bed due to back pain, which occurred about once every 2 weeks. (*Id*. at 69.)

Plaintiff spent most of her time during the day sitting until she had to get up, and then she would get up for a little while to do what she had to do before going back to sit or lay down. (*Id*. at 70.) Her most strenuous chores included sweeping and mopping the floor and cleaning her bath tub. (*Id*. at 65.) She normally slept about 8 hours per night, but she spent about 6 hours per day laying down outside of her normal sleeping hours. (*Id*. at 70-71.) She estimated that she was on her feet probably less than 2 hours per day, and as she sat at the hearing, she was in pain that she estimated to be at about an 7-8 out of 10. (*Id*. at 71-72.) More walking or standing would likely increase her pain. (*Id*. at 72.)

Plaintiff previously worked as a medical records clerk and laundry mat supervisor. (*Id*. at 53-54.) She did not think she could return to either of her previous jobs because as a medical records clerk, there was a lot stooping, bending down, reaching up high, and carrying heavy loads, and as a laundry mat supervisor, the job was too physical. (*Id*. at 52-53.) She estimated that she could walk about 400 yards in good weather on a flat surface before she would have to stop. (*Id*. at 56-57.) She thought she could shop around a store such as Walmart for about 20 minutes before having to sit down. (*Id*. at 57-58.) In an 8-hour day, she could be on her feet about 2 hours total, and would be extremely unlikely to be on her feet for 5.5-6 hours total per day, day in and day out, 5 days per week, due to her back and breathing issues. (*Id*. at 58-60.) Lifting and carrying 10-12 pounds 10-15 times per hour, or standing and walking for an hour and 15 minutes, would be big problems for her because she could not really do either activity. (*Id*. at 68.)

Her back hurt on each side of her spine going all the way down to the lower part of her back and all the way across the lower part of her back almost continuously. (*Id*. at 60-61.) She was not sure how she injured her back, but thought that it could have happened about 5 years earlier when a big dog caused her to fall and hit her back, butt, and head. (*Id*. at 62.) Her back had become progressively worse as she got older. (*Id*. at 62-63.) She had also been diagnosed with asthma initially and then with emphysema by Dr. Srivathanakul, and she used an inhaler twice per day. (*Id*. at 63.) Over the course of her treatment, Plaintiff had about 4 total visits to Dr. Srivathanakul. (*Id*. at 45.) She did not think that she had any mental impairment that would preclude her from being a safe driver, but in the previous 2 years, she had faced physical and financial problems that caused her to have some depressed feelings and thoughts. (*Id*. at 51-52.) She had not been treated by a psychiatrist or a psychologist since August 12, 2015, other than attending a group meeting about 3

months prior to the hearing. (*Id*. at 48.) She had also not been prescribed any psychiatric medication in the past, and had not been mentally hospitalized or "picked up" for a psychiatric evaluation at any time in her life. (*Id*. at 49-51.)

### b. *VE's testimony*

The VE determined that Plaintiff's work history included jobs as a medical records clerk, DOT 245.362-010 (light, SVP 4), and a laundry mat supervisor, DOT 361.685-018 (medium, SVP 2). (*Id*. at 35.) A hypothetical individual with the same age, education, and work history as Plaintiff would not have any transferable skills to sedentary work after age 55 where there would be very little, if any, adjustments in terms of tools, work processes, work setting, or the industry. (*Id*. at 36.)

The VE considered a hypothetical individual with the same age, education, and work history as Plaintiff who could lift up to 10 pounds occasionally and less than 10 pounds frequently; sit for 4 hours without interruption; stand for 4 hours without interruption; walk for 2 hours without interruption; sit for 4 hours in an 8-hour workday; stand/walk for 2 hours in an 8-hour workday; frequently reach overhead in all directions; frequently handle, finger, feel, push, and pull with both hands; and occasionally use foot controls. (*Id*. at 41-43.) This individual would be able to perform no more than sedentary work. (*Id*. at 42-43.)

The VE next considered a hypothetical individual who could lift up to 50 pounds occasionally and 25 pounds frequently; push and pull without limitations other than the strength limitations; frequently perform "posturals" except only stoop and crouch occasionally; and frequently climb ladders, ropes, scaffolds, ramps, stairs, balance, kneel, and crawl. (*Id*. at 46, 56.)[2]

---

[2] Although the ALJ stated the restriction as only lifting up to 10 pounds occasionally, he stated that he was specifically relying on SAMC Dr. Lee's opinion on reconsideration, which limited Plaintiff to lifting to up to 50 pounds occasionally. (*See* doc. 12-1 at 46, 94-96.) The ALJ also later questioned how reasonable it was that an individual of Plaintiff's weight "could reasonably be expected to lift 50 pounds occasionally." (*Id*. at 56.)

9

The individual had no visual, manipulative, or communicative limitations, but environmentally, the individual must avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gases, poor ventilation, hazardous machinery, and heights. (*Id*.) This individual would be able to perform some form of medium work, and would be able to perform Plaintiff's prior work as a medical records clerk, which was performed at the light exertional level and in a climate controlled environment. (*Id*. at 47.)

C.  **ALJ's Findings**

The ALJ issued his decision denying benefits on May 12, 2017. (*Id*. at 16-25.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 12, 2015, the application date. (*Id*. at 18.) At step two, the ALJ found that she had the following severe impairments: spine disorder, asthma, and underweight (low BMI). (*Id*.) Despite those impairments, at step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or equaled the severity of one of the impairments listed in the social security regulations. (*Id*.)

Next, the ALJ determined that Plaintiff retained the RFC to perform light work but included the following limitations: she could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk a total of 6 hours in an 8-hour workday; sit a total of 6 hours in an 8-hour workday with normal breaks; push and/or pull without limitation (including operation of hand controls) other than shown for her ability to lift and/or carry; frequently operate foot controls; frequently climb ladders, ropes, and scaffolds; frequently crawl and balance; occasionally stoop, bend, squat, kneel, and/or crouch; occasionally speak; occasionally, but never with concentrated exposure, have contact with cold/heat, wetness/humidity, fumes/odors, hazards/machines, and heights; frequently drive; and frequently use bi-manual dexterity, fine coordination, reaching, handling, fingering, and hearing.

(*Id*. at 19.) The ALJ further found that visually, she had no limitations. (*Id*.)

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a medical records clerk because that job did not require the performance of work-related activities that were precluded by her RFC. (*Id*. at 24.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Act, since August 12, 2015, the date the application was filed. (*Id*.)

## II. ANALYSIS

A.  **Legal Standards**

   1.   **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program

is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are also identical to those governing the determination under a claim for supplemental security income. *See id.* Courts may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work,

other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.     Treating Physician Rule**

In her only issue, Plaintiff argues that the ALJ failed to give proper weight to Dr. Srivathanakul's opinions regarding her ability to work. (doc. 18 at 3-7.)

The Commissioner is entrusted to make determinations regarding disability, including weighing inconsistent evidence. 20 C.F.R. § 404.1529(b). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating source. *Id*. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is a claimant's "physician, psychologist, or other acceptable medical source" who provides or has provided a claimant with medical treatment or evaluation, and who has or has had an ongoing treatment relationship with the

13

claimant. *Id*. § 404.1502. When "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. *Id*. §§ 404.1527(c)(2), 416.927(c)(2). If controlling weight is not given to a treating source's opinion, the Commissioner considers six factors in deciding the weight given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor which "tend[s] to support or contradict the opinion." *See id*. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

While an ALJ should afford considerable weight to opinions and diagnoses of treating physicians when determining disability, sole responsibility for this determination rests with the ALJ. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). If evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Id*. A treating physician's opinion may also be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 455–56. Nevertheless, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [then] 20 C.F.R. § 404.1527(d)(2)." *Id*. at 453. A detailed analysis is unnecessary, however, when "there is competing first-hand medical

evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," or when the ALJ has weighed "the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id*. at 458.

Here, the ALJ discussed the findings in the medical source statement completed by Dr. Srivathanakul. (doc. 12-1 at 21, 23.) He also discussed the internal medical consultative examinations completed by Drs. Nachimson and Ukoha, the RFC assessments completed by the SAMCs, Plaintiff's own statements, and the other medical evidence of record. (*Id*. at 19-24.) In giving Dr. Srivathanakul's opinions in the medical source statement "little weight," the ALJ determined that the opinion was "based on only about three examinations of claimant dispersed over the period 2015 and 2016," "too vague, as the statement provide[d] no analysis of the functional limitations that [led] to [the] conclusion," and that "Dr. Srivathanakul made no reference to objective clinical findings or narrative treatment notes to support the opinion." (*Id*. at 23.) The ALJ further found that available notes contained "only few actual objective signs and findings, which [were] benign and [did] not suggest the claimant [was] as severely limited" as the medical source statement suggested, and that Dr. Srivathanakul's opinion was "not well supported by the remainder of the record or consistent with the record as a whole . . . ." (*Id*.)

Although the ALJ did not make a specific finding as to each of the factors in 20 C.F.R. §§ 404.1527(c)(1) and 416.927, he specifically stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927. (*See id*. at 19, 23.) His decision reflects consideration of the factors: he found that Dr. Srivathanakul's opinion was based on only 3 examinations of Plaintiff that occurred between 2015 and 2016, it was too vague, Dr. Srivathanakul

15

failed to reference any objective clinical findings or treatment notes to support it, available notes did not support the severe limitations in the opinion, and it opinion was not consistent with the record as a whole. (*See id*. at 23.) The regulations require only that the Commissioner "apply the factors and articulate good cause for the weight assigned to the treating source opinion." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Brewer v. Colvin*, No. 3:11-CV-3188-N, 2013 WL 1949842, at *6 (N.D. Tex. Apr. 9, 2013), *adopted by*, 2013 WL 1949858 (N.D. Tex. May 13, 2013); *Johnson v. Astrue*, No. 3:08-CV-1488-BD, 2010 WL 26469, at *4 (N.D. Tex. Jan. 4, 2010). "The ALJ need not recite each factor as a litany in every case." *Brewer*, 2013 WL 1949842, at *6 (citing *Johnson*, 2010 WL 26469, at *4).

Moreover, Dr. Srivathanakul's medical source statement was only a "brief and conclusory" check-box questionnaire. (*See* docs. 12-1 at 276-81; 19 at 6-7.) The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are brief and conclusory and lack explanatory notes or supporting objective tests and examinations. *See Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011). As noted, the medical source statement at issue was a brief and conclusory check-box form that did not include any explanatory notes or supporting tests or examinations. (*See* doc. 12-1 at 276-81.) The ALJ could therefore also discount Dr. Srivathanakul's opinions in the medical source statement for lacking "any substantive explanation." *See Foster*, 410 F. App'x at 833 (agreeing with the magistrate judge's conclusion that the ALJ did not err in assigning only little weight to a brief and conclusory questionnaire).

To the extent Plaintiff argues that the ALJ erred in failing to give proper weight to Dr. Srivathanakul's August 6, 2015 and October 17, 2016 statements that she was permanently disabled

16

and unable to work due to her back arthritis and/or asthma, the ALJ properly discounted these statements as non-medical opinions. (*See* doc. 12-1 at 23, 274-75.) Sections 404.1527(c) and 416.927(c) do not apply to opinions that a claimant cannot work or is disabled. *See Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (per curiam). A treating physician's opinions regarding a Plaintiff's disability are not medical opinions and are not entitled to any special significance because the issue of disability is a legal conclusion reserved to the Commissioner. 20 C.F.R. § 416.927(d); *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Because physicians generally define "disability" in a manner distinct from the Act, an ALJ can properly reject any conclusion of disability as determinative on the ultimate issue. *See Tamez v. Sullivan*, 888 F.2d 334, 336, n.1 (5th Cir. 1989) (doctor's note that claimant was "disabled" did not mean that the claimant was disabled for purposes of the Act).

The ALJ's reasons for assigning only "little weight" to Dr. Srivathanakul's medical source statement and disregarding his statements that Plaintiff was disabled, combined with his review and analysis of the objective record, satisfy his duty under the regulations and constitute "good cause" for affording only little weight to Dr. Srivathanakul's opinions. *See Brewer*, 2013 WL 1949842, at *6 (finding the ALJ's explanation as to why he did not give controlling weight to a treating physician's opinion constituted "good cause" even though he did not make a specific finding as to each of the factors set forth in 20 C.F.R. § 1527(c)(2)); *Johnson*, 2010 WL 26469, at *4 (same); *Hawkins v. Astrue*, No. 3:09-CV-2094-BD, 2011 WL 1107205, at *6 (N.D. Tex. March 25, 2011) (same); *Gomez v. Barnhart*, No. SA-03-CA-1285-XR, 2004 WL 2512801, at *2 (W.D. Tex. Nov. 5, 2004) (finding the ALJ complies with regulations if the resulting decision reflects that consideration was given to medical consultant's opinion). Remand is therefore not required on this

17

issue.[3]

### III. CONCLUSION

The decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**, on this 28th day of March, 2019.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff also argues that the ALJ failed to properly consider that she was underweight in combination with her lumbar spine impairment. (doc. 18 at 6.) The ALJ's decision shows, however, that he did consider Plaintiff's weight in determining her RFC, and expressly reduced the amount she could lift and/or carry "due to her being underweight," which he recognized "as having some impact on an individual's functional physical abilities. (doc. 12-1 at 24.)